Mariano S. FALCON

v.

GENERAL TELEPHONE COMPANY.

No. CA 3-75-0403-B.

United States District Court,
N. D. Texas,
Dallas Division.

Oct. 20, 1978.

Frank P. Hernandez, Hernandez, Inc., Dallas, Tex., John E. Collins, McGuire, Levy, Collins & McCurley, Irving, Tex., for plaintiff.

Coke & Coke by E. Russell Nunnally, Dallas, Tex., Preston, Holt & Goodrum by Stephen W. Holt, San Angelo, Tex., for defendant.

## ORDER

HUGHES, District Judge.

The plaintiff, Mariano S. Falcon, a Mexican-American, was hired by General Telephone on July 7, 1969. He brought this suit against General Telephone for himself and Mexican-Americans similarly situated on April 3, 1975, alleging discrimination in hiring and promotion.

Judgment was rendered on March 22, 1977, the Court finding that Falcon was not discriminated against in hiring, but in promotions the General Telephone discriminated. As to the class, however, General Telephone discriminated in hiring but not as to promotion.

In fashioning the relief in the instant case, the Court has, insofar as possible, made each plaintiff whole for the damage which each named plaintiff suffered. The relief granted includes awards for backpay, overtime pay, where evidence of overtime work performed was presented, loss of job security, and six (6) percent interest compounded annually from the end of "phase I" of the trial to date of this judgment.

The Plaintiff prays and the Court denies monetary relief for shift differential pay, potential promotions, and "individual initiative" on the grounds that such an award would be too speculative. Although the Court is cognizant of the difficulty in ascertaining to an exactitude, damages in back pay awards, the Court has fashioned the relief in a manner which avoids the "quagmire of hypothetical judgments" noted in *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 260 (5th Cir. 1974).

The Court further finds that damages should be granted up to the end of "phase I" of the trial. This determination is grounded upon the finding that the Defendant, by this date, had remedied the discriminatory practices which gave rise to the instant litigation. Such a cut-off date, the Court finds, is in keeping with the principles enunciated in *James v. Stockham Valves and Fittings Co.*, 559 F.2d 310, 358 (5th Cir. 1977). Although in *James, supra*, the Fifth Circuit examined the applicability of "front pay" awards in Title VII cases, the Court here finds that damages, calculated to the end of "phase I" of the trial, plus interest, is analogous to placing the discriminatee in his "rightful place."

 In a Title VII trial it is the complainant who must carry the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973). This burden has been met by each named plaintiff. The burden then shifts to the prospective employer to persuade the Court that the failure to hire the individual was based upon non-discriminatory grounds. *Id.*

The Court finds from the evidence presented that the defendant's method of accepting and acting upon applications for employment while not in itself discriminatory, exacerbated the extant discriminatory practices of the Defendant.

Unrebutted evidence was presented that applicants seeking employment were never told what jobs were available at the time of their application. This practice led many of the plaintiffs to apply for "anything" rather than select a possible second position. Similarly, absent information of available positions, the applicants had no idea what skills the defendant deemed essential for employment. Although the defendant had a policy of keeping applications "active" for a 90 day period, this information was never communicated to these minority applicants at the time they tendered their applications. Thus, applicants who believed they would be considered for a job whenever an opening developed, learned at trial that the defendant had placed their application in an inactive file 90 days after its submission.

 Because the defendant failed to give plaintiffs notice of the types of jobs available, failed to communicate to these applicants what qualifications were necessary, and failed to inform any plaintiff that his application would be "retired" after 90 days, the Court finds that under the facts of this case it is the defendant and not the plaintiff who must carry the burden of proof on the issue of job availability.

The Court further finds from the evidence that the defendant, when it offered any proof, offered proof of job availability only for the 90 day period subsequent to the applicant's tendering of his application.

The Court finds that the information described above was peculiarly within the knowledge of the defendant and though requested by plaintiff's counsel was never provided the opposing party. Thus, as Mr. Justice Powell noted in *McDonnell Douglas, supra*, the "prima facie proof required . . . is not necessarily applicable . . . to differing factual situations." *Id.* at 802 n. 13, 93 S.Ct. at 1824. The Court finds the instant case to be one such "differing factual situation" warranting a shifting of the burden of proof on the issue of job availability. Thus, when the defendant has failed to bring forth evidence of job nonavailability after the 90 day period, the Court has awarded damages as if a job was available on the 91st day.

### Findings of Fact

CASTILLO, JOSE R.

Mr. Castillo, thirty-four years old, applied for a Field Inspector's position at General Telephone on July 16, 1973. The Court finds, by the evidence presented, that no field inspector's position was available during the three months in which Mr. Castillo's application was "active." Because there is no evidence that a Field Inspector's position was not available after this three month period, the Court has determined that back wages should be granted from the first day after the three month period to the end of

"phase I" of the trial. Actual Earnings have also been calculated on the basis of these dates. Plaintiff's rate of pay is based upon information supplied by both Plaintiff and Defendant. Where the parties disagreed, the Court has averaged their data to arrive at a satisfactory rate of pay.

## CERDA, MARIA

Mrs. Cerda applied for a clerk's position or any position at General Telephone on August 11, 1974. Although, by the evidence presented, General Telephone hired three clerks during the three month period in which Mrs. Cerda's application was "active", the Court finds that the people hired were more qualified for the clerk's position than Mrs. Cerda who was unable to type and would begin typing lessons in September, 1974. Because there is no evidence that a clerk's position or any other position was not available after Mrs. Cerda's "active" period, the Court has determined that back wages should be granted from the first day after the three month period to the end of "Phase I" of the trial. Plaintiff's rate of pay was based upon data presented in General Telephone's collective bargaining agreement dated June 16, 1974, Appendix B–4. This is the pay structure for an entry level clerk in the Irving facility.

## ESQUIVEL, PEDRO JUAN

Mr. Esquivel applied for an electronic technician's position or any position at General Telephone on October 6, 1975. The defendant put forth evidence that during the "active" period of Mr. Esquivel's application one frameman's position became available. This position was filled by Milton Johnson, an ex-employee of General Telephone's Irving facility. The Court finds that Mr. Johnson was better qualified than Mr. Esquivel for the position of frameman. There is little or no evidence, however, that a position was or was not available after the application of Mr. Esquivel was no longer "active", see defense exhibit 53, and therefore the Court has granted damages from the first day after the three

month period until the end of "phase I" of the trial. The parties have disagreed on the proper rate of pay for Mr. Esquivel. Defendant relies on data presented in Appendix E–3 of the 1974 Collective Bargaining Agreement reserved for Frameworkers and Helpers (entry level position). *See Appendix E–18.* Plaintiff has classified Mr. Esquivel in the highest "Service & Engineering-Construction Workers" category. *See* Appendix E. The Court has resolved this controversy by placing Mr. Esquivel in Group III, one step above entry level for his entire operative period. See Appendix E–2.

## FLORES, ARMILDA

Ms. Armilda Flores, age twenty-three, applied for a general clerk's position or a position at the "repairment" (sic) department of General Telephone on June 26, 1974. Evidence was presented that the defendant hired a number of people during the "active" period of Ms. Flores application. *See* defense exhibit 19. All applicants, the Court finds, were better qualified than Ms. Flores except one. As for applicant Barbara Toliver, *See* defense exhibit 19 (third applicant at pp. 1–2) the defense presented oral testimony that Toliver had "shown a desire to learn." The Court finds this evidence insufficient to deny Ms. Flores a position. The Court also finds defendant's characterization of Ms. Toliver equally applicable to Ms. Flores. The Court has therefore calculated Plaintiff's damages from the date of application through the end of "phase I" of the trial. Defendant also argues that plaintiff has overstated Ms. Flores potential earnings at the Irving facility by opting for a rate of pay higher than she deserves. The Court has placed Ms. Flores in Appendix B–4, the entry level for clerks at the Irving facility.

## GARCIA, FLORIA

Ms. Garcia applied for either an operator's or clerk typist's position at General Telephone on October 15, 1974. At the time of her application, Ms. Garcia could type fifty words per minute. Although defendant put forth evidence that no full-time

positions were available from October 1974 to May 1975, plaintiff countered by showing that some individuals were hired, including certain part-time positions. The Court has therefore calculated plaintiff's damages from three months after her date of application through "phase I" of the trial. Evidence was presented, however, that Ms. Garcia worked only part-time for some four years after her application to defendant. This decision was her own choice. The Court has therefore granted plaintiff only part-time employee's wages for the entire operative period. Part-time wages are calculated on the basis of twenty hours per week. This determination appears to parallel Ms. Garcia's actual work record during this same period.

### GARZA, DIANA

Ms. Garza applied for an office clerk's position, a teller's position or a service representative's position at General Telephone on August 14, 1974. One person was hired during the active period of plaintiff's application. There is no evidence whether this person was better qualified than Ms. Garza but by her application it is clear that Ms. Garza had no typing or shorthand skills at the time of her application. The Court has computed Ms. Garza's damages from three months after her date of application through "phase I" of the trial and has classified Ms. Garza as an entry level clerk. *See* Appendix B–4.

### GUZMAN, ANICETO DIAZ

Mr. Guzman applied for a Lineman's position or "whatever was available" at General Telephone's Irving facility on September 16, 1974. He stated in his application that he was not available until December of that year. The Court has therefore calculated Mr. Guzman's damages from December 1, 1974 through "phase I" of the trial. The parties have disagreed on the proper rate of pay for Mr. Guzman had he been employed at defendant's Irving facility. The Court finds that a "Lineworker's position". *See* Appendix E–2, is the appropriate classification and damages have been calculated accordingly.

### LONGORIA, JUAN J.

Mr. Longoria applied for a Lineman's position with General Telephone on April 30, 1973. Although there is no testimony whether a Lineman's position became available, the Court has determined under existing precedent that the earliest date for which backpay can lawfully be awarded is August 23, 1973. Thus, the Court has computed Mr. Longoria's damages from August 23, 1973, through the end of "phase I" of the trial. Further, the Court has classified Mr. Longoria as a Lineman in Group III. *See* Appendix E–18.

### LOPEZ, ROBERT ALFRED

Mr. Lopez applied to General Telephone on July 24, 1974, for a Phone Installer's position or "any position." In his application, Mr. Lopez expressed his willingness to work nights, Saturdays, Sundays, and Holidays. Evidence was presented that no Installer's position opened during the pendency of Mr. Lopez' application. The Court has therefore calculated Mr. Lopez' damages from three months after his application through "phase I" of the trial.

Although Plaintiff classified Mr. Lopez as a Group II employee throughout this period, *See* Plaintiff's Exhibit 9, the Court finds that Mr. Lopez is more properly classified as a Group IV employee (entry level status) during the first six months of his employment and then as a Group I employee thereafter so as to account for the necessary training required of new employees. Further, an additional adjustment has been made to Mr. Lopez' actual earnings to account for the use of an apartment during twelve months of the operative period. On the basis of testimony presented, the Court has valued the use of the apartment at $125.00 per month. No adjustment has been made for Mr. Lopez' use of an automobile on the grounds that such use does not amount to income and was provided by the employer for the employer's business purposes.

### LYSHOL, MARTHA

Ms. Lyshol applied for a cashier's position, a clerk's position, an operator's posi-

tion or "any position" at General Telephone on October 8, 1975. Defendant put forth evidence that plaintiff was not hired because she did not possess the skills necessary to operate a "ten-key" adding machine. This was so, the defendant argues, even though Ms. Lyshol was able to type thirty-five words per minute. Further, the defendant states that Ms. Lyshol refused to work on Sundays therefore making her ineligible for certain other positions for which she was qualified. On Ms. Lyshol's application it is clear that she was available on nights, Saturdays and holidays.

The Court finds the defendant's grounds for denying Ms. Lyshol employment to be illusory and has therefore calculated her damages from the day after her application. Further, the Court has classified Ms. Lyshol as an entry level clerk under the 1974 Collective Bargaining Agreement governing pay scales at General Telephone's Irving facility. See Appendix B–4.

## MARES, STEVEN

Mr. Mares applied at General Telephone on July 23, 1976, for an Installer Repairmen's position or a Frameman's position. Plaintiff testified, and the Court finds credible, that plaintiff, like all other plaintiffs here, was never told of an "active" period nor that the defendant "retired" an application after 90 days. Further, the defendant put forth no evidence regarding the availability (or nonavailability) of the position during the pendency of Mr. Mares' application. The Court has therefore calculated damages for Mr. Mares beginning one day after his application and extending through the end of "phase I" of the trial. The Court has classified Mr. Mares as an Installer Repair Person (Group II; Appendix E–1) based upon his prior experience with Mountain Bell as an Installer Repair Person. Further, because Mr. Mares held two jobs during the period of 7–24–76 to 8–6–76, the Court has awarded Mr. Mares overtime wages equaling eighty hours during that same period. This, the Court finds, is the only equitable manner of resolving Mr. Mares potential earnings, vis-a-vis his actu-al earnings for the same period. It must be noted, however, that no overtime wages beyond the above period have been granted by the Court for Mr. Mares.

## ORTIZ, HERMALINDA

Ms. Ortiz applied to General Telephone on March 19, 1974, for a Clerical Trainee's position. Defendant, through testimony by Edda Bates, presented evidence that eleven positions existed while plaintiff Ortiz' application was active. Defendant further elicited testimony that the necessary qualifications for these positions varied but the plaintiff must have been able to; work nights, operate a "ten-key" adding machine, or have a sales or a clerical background. The Court finds the defendant's grounds for denying Ms. Ortiz employment to be without foundation. The skills necessary to operate a "ten-key" adding machine were certainly within Ms. Ortiz' capabilities and the training period would not have been so onerous as to preclude the defendant from hiring her. The Court has therefore calculated Ms. Ortiz' damages from the day after her application through the end of "phase I" of the trial. The Court has classified Ms. Ortiz as an entry level clerk. See Appendix B–4.

## SANCHEZ, RAMON S.

Mr. Sanchez applied to General Telephone on June 21, 1974, as a maintenance or labor trainee. Defendant presented evidence that no jobs, of the type Mr. Sanchez applied for, were available during the pendency of Mr. Sanchez' application. The Court has therefore calculated damages from the first day after Mr. Sanchez' application was no longer active. The Court further finds that, notwithstanding the testimony, Mr. Sanchez was never a full-time student and has therefore calculated damages for the entire period. The testimony regarding Mr. Sanchez' studies included a statement that he was a full-time student at Tarrant County Junior College, a full-time student at University of Texas at Arlington, and a full-time employee as a porter at the Dallas-Fort Worth Airport. His status as a student and employee supposedly occurred

at the same time. Due to Mr. Sanchez' condition (Parkinson's disease) the Court has made every effort to reconstruct this period in his life from testimony, interrogatories presented to the Court and his work record. Because Mr. Sanchez received unemployment compensation during eleven months of the operative period, the Court considers such compensation to be in lieu of compensation he would have earned had he been employed. Therefore, Mr. Sanchez' unemployment compensation has been included in his actual earnings. The Court has not altered Mr. Sanchez' income because of his debilitating disease. The Court reaches this conclusion on the grounds that Mr. Sanchez continued in gainful employment through the operative period determined by this Court.

## FALCON, MARIANO S.

Mr. Falcon was hired by General Telephone on July 7, 1969, pursuant to a program devised to employ unemployed minorities. The Court has previously found that there was no evidence of discrimination against Falcon in hiring. Falcon was employed by General Telephone as a Ground Worker, after 30 days he was promoted to Line Worker and subsequently to Line-Worker-In-Charge by the end of his first year. He received no further promotion prior to the time he sought a promotion to Field Inspector on October 8, 1972. The Court finds that at that time he was discriminated against, 4 other men, not Mexican-Americans, with less seniority than Falcon, had been promoted over him. His potential earnings have therefore been calculated on the basis of the position Field Inspector.

Mr. Falcon voluntarily refused a promotion to Installer Repairman at General Telephone in 1970, and in 1972 he voluntarily stepped down from Lineman-In-Charge to Lineman. Because of Mr. Falcon's refusal to accept a promotion and in stepping down, these actions have been considered in the determination of his actual wages. Since he was employed by General Telephone during the entire time for which damages have been awarded, the additional amount has not been included for job security, interest, however, has been included.

*Attorneys' Fees*

In "phase I" of this trial, it was determined that plaintiff, Mariano S. Falcon for himself and the class he represents, was entitled to recover attorney fees. The attorneys working on the case were Frank Hernandez, John Collins, and law clerk George Solares. A paralegal clerk Lynn Drake also worked on the case.

A reasonable fee for attorneys is $80.00 an hour. Frank Hernandez spent 182 hours in preparation, making his fee $14,560.00. John Collins spent a total of 112 hours in preparation, making his fee $8,960.00. A reasonable fee for a law clerk is $25.00 an hour. George Solares spent 89.5 hours in preparation as a law clerk, making a total fee of $2217.50. A reasonable fee for a Junior Attorney is $60.00 an hour. George Solares, after he was admitted to the bar, spent 36.5 hours, making a total fee of $2190.00. A reasonable fee for a paralegal clerk is $20.00 an hour. Lynn Drake, a paralegal working for John Collins spent 45 hours in paralegal work, making a total fee of $900.00. Mariano S. Falcon for himself and for the class he represents is entitled to recover a total of $28,827.50 for legal services.