**CONCORDE LIMOUSINES, INC., Plaintiff-Appellee Cross-Appellant,**

v.

**MOLONEY COACHBUILDERS, INC., Defendant-Appellant Cross-Appellee.**

No. 87–2008.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1987.

Larry Huelbig, Butler & Binion, Houston, Tex., for defendant-appellant cross-appellee.

Elena Maslia Marks, Mayor, Day & Caldwell, Houston, Tex., for plaintiff-appellee cross-appellant.

Before WISDOM, GEE, and RANDALL, Circuit Judges.

WISDOM, Circuit Judge:

This appeal grows out of a dispute between a limousine retailer and its supplier. Moloney, the supplier, is an Illinois corporation that converts standard automobiles into limousines and sells them through dealers. Concorde, the retailer, is a Texas corporation that sells cars. Early in 1983, Concorde decided to expand its operations into limousine sales. By June 1983, Concorde had expanded its sales facility, purchased and sold several limousines, and inquired of several limousine suppliers regarding distributorship arrangements and purchase prices. Moloney was one of these suppliers.

After preliminary discussions, representatives of Concorde and Moloney met on June 30, 1983 to work out the terms of a distributorship agreement. At that meeting, the Moloney representatives said that they had done a market survey showing that a new Moloney distributor could sell 72–75 limousines in Houston within a year. They also promised the limousines to Concorde at the "best price available". Concorde understood this to mean that its purchase price was to be the lowest of all but one of Moloney's existing distributors, Potamkin Cadillac.

Concorde and Moloney signed a formal, three-year distributorship agreement on July 20, 1983. Among other things, this obliged Concorde to purchase at least 60 limousines according to a prepayment and delivery schedule covering October 1983 to September 1984. In exchange, Moloney promised that Concorde would be its exclu-

sive dealer in the Houston area and guaranteed Concorde a price of $16,500 for the regular (46–inch) stretch limousine.

On the basis of Moloney's earlier representation, Concorde took this to be the lowest price paid by any Moloney dealership but Potamkin. It was not. In February 1984, Concorde received what later became known as the "mystery letter", an anonymous letter containing a price list for all of Moloney's distributors.[1] The list showed that Potamkin paid the lowest price, $12,000 per regular stretch limousine. It also showed that another distributor paid Moloney's second lowest price, $12,800—$3700 less than Concorde's price of $16,500. In fact, Concorde's price was the highest of any Moloney buyer listed. Excluding Potamkin, Concorde paid about $2500 more per limousine than the average price paid by Moloney's other listed distributors.[2]

This information distressed Concorde's management. Concorde had begun purchasing Moloney limousines soon after the formal agreement was signed and, by January 1984, had purchased 28 Moloney limousines but sold only 14.[3] The "mystery letter" and Concorde's difficulties selling its limousine inventory led it to seek price concessions and reimbursements from Moloney. Although Moloney negotiated with Concorde over these demands, the parties failed to resolve all their differences. Concorde cancelled its distributorship and filed this suit in December 1984.

Concorde based its action on common law fraud and misrepresentation, breach of contract, and the Texas Deceptive Trade Practices Act ("DTPA").[4] In response to interrogatories, the jury found that Moloney's "best price" representation violated the DTPA, but found against Concorde on the other claims. For the DTPA violation, the

**1.** *See* Plaintiff's exhibit 15. We reproduce the pertinent parts here:

| Distributor | No. of Cars | 46″ Price | 48″ Price |
|---|---|---|---|
| Transportation Systems | 60 est. | $14,500 | $18,500 |
| Hanley Dawson | 40 est. | 13,500 | 18,500 |
| Hillcrest | 100 est. | 14,500 | 18,000 |
| Moore Cadillac | 40 contract | 13,500 | 18,500 |
| Sansone Cadillac | 40 contract | 12,800 | 18,500 |
| Andrew LM | 60 contract | 13,000 | 18,000 |
| Penske Cadillac | 20 est. | 14,900 | 18,900 |
| Manhattan LM | 12 est. | 13,000 | 18,500 |
| Braman Cadillac | 25 est. | 13,000 | 18,500 |
| Libertyville LM | 10 est. | 14,500 | 18,500 |
| Concorde Limousines | 60 contract | 16,500 | 20,500 |
| Potamkin Cadillac | 50 est. | 12,000 | 18,000 |
| Apple Chevrolet | 40 contract | 13,000 | — |
| Contracts Out—Not Signed | | | |
| Newport Limousine | 48 contract | 14,900 | 18,900 |
| Bright Bay Classic | 30 contract | 13,600 | 18,600 |
| Marty Motors | 50 contract | — | — |
| John Westropp & Norm Hasenmiller | 10 | 14,995 Net Moloney | 18,995 Net Moloney |
| Jim Cooney | 40 | 14,995 | 18,995 |
| Bob Fox | 15 | 14,995 | 18,995 |
| Bill Gaden | 15 add'l | 14,995 | 18,995 |

**2.** Excluding Concorde and Potamkin, the average price per regular stretch limousine paid by the 17 other buyers was $14,040. The average price paid by the 16 buyers with volume equal to or less than Concorde's was $14,011. *See* note 1.

**3.** Concorde placed no new orders after October 1983 and received its last delivery from Moloney in February 1984.

**4.** The DTPA is codified at Tex.Bus. & Comm. Code Ann. § 17.41 *et seq.* (Vernon Supp.1987).

jury awarded $77,805 in actual damages and no punitive damages. On this verdict, the district court entered a final judgment for Concorde of $79,805 [5] and $25,000 in attorney's fees.[6]

Both Concorde and Moloney appeal this judgment. Moloney challenges the sufficiency of the evidence supporting the DTPA verdict and contends that the fee award should have been reduced by the amount of work Concorde's attorneys did on the losing claims. Concorde challenges the trial court's decision not to award prejudgment interest on the DTPA award. We affirm the district court's award of DTPA damages and attorney's fees, but remand the cause to the district court to reconsider Concorde's request for prejudgment interest.

## I.

■ DTPA Section 17.50 makes sellers liable to consumers for actual damages where "a false, misleading, or deceptive act or practice" is "a producing cause" of those damages.[7] As this court noted in *Pope v. Rollins Protective Services Co.,*

One of the primary reasons for the enactment of the DTPA was to provide consumers with a remedy for deceptive trade practices without the burdens of proof and numerous defenses encoun-

tered in a common law fraud or breach of warranty action.[8]

In keeping with the DTPA's broad, remedial purpose, Section 17.44 provides:

This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false misleading and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.[9]

In the light of the DTPA's broad purpose and the act's specific provision that sellers are strictly liable for misleading statements about price,[10] the jury had ample grounds to find that Moloney's "best price" representation was a "deceptive act" within the meaning of the DTPA. What Moloney actually meant by "best price" is irrelevant.[11] The record supports both the finding that Concorde understood "best price" to mean it would receive the lowest price of all but one of Moloney's then distributors,[12] and the finding that this understanding was reasonable.[13] It is clear that Concorde did not receive Moloney's "best price".

The jury also had ample grounds to find that Moloney's "best price" misrepresentation was a producing cause of the damages awarded Concorde. "A producing cause" means a cause-in-fact—"an efficient, exciting, or contributing cause"—not *the*

---

**5.** The DTPA requires trebling of the first $1000 of actual damages. *Id.* § 17.50(b)(1).

**6.** The parties stipulated that the amount of any "reasonable and necessary" fee award be left to the district court's discretion as a trier of fact. *See id.* § 17.50(c), (d).

**7.** *Id.* § 17.50(a)(1).

**8.** 703 F.2d 197, 201 (5th Cir.1983). *See also Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex. 1980).

**9.** Tex.Bus. & Comm.Code Ann. § 17.44 (Vernon Supp.1987). *See United Postage Corp. v. Kammeyer,* 581 S.W.2d 716, 723 (Tex.Civ.App.—Dallas 1979); *Rinehart v. Sonitrol of Dallas, Inc.,* 620 S.W.2d 660, 662 (Tex.Civ.App.—Dallas 1981).

**10.** Section 17.46 lists 23 examples of "false, misleading, or deceptive acts or practices", includ-

ing "making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions". *See* Tex.Bus. & Comm.Code Ann. § 17.46(b)(11) (Vernon Supp. 1987). Section 17.46 also specifically cautions that this list is not exhaustive. *Id.* § 17.46(b).

**11.** *See Allais v. Donaldson, Lufkin & Jenrette,* 532 F.Supp. 749, 751 (S.D.Tex.1982) (strict liability for most DTPA Section 17.46 violations). *See also Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540–41 (Tex.1981) (no scienter or privity requirements in DTPA action unless statute specifically provides them).

**12.** Record, Vol. II at 46–47, 109–110, 115–16; Vol. III at 89–91.

**13.** That Moloney charged lower prices to other distributors with the same or lesser volume than Concorde is proof enough of this point. *See* note 1.

cause.[14] Moloney argues that Concorde's problems selling its limousine inventory stem more from poor management than from the price Moloney charged. This has little to do with whether Moloney's misrepresentation was *a* producing cause of the damages awarded. Regardless of the quality of Concorde's management, regardless of how much of its limousine inventory it sold, and regardless of the magnitude of its profits or losses, Concorde would have paid less per limousine had Moloney charged the "best price" it promised.

The record contains convincing evidence that Concorde could have received the "best price" it expected. Moloney faced competition from several other limousine suppliers. Concorde's officers testified that it ceased looking for a better price on the strength of Moloney's "best price" promise.[15] Had Concorde known it would not receive Moloney's "best price", it could have held out for a better deal from Moloney or taken its business to a competitor. The record shows that Moloney offered considerably better prices to *all* its other buyers, including distributors with lesser volume than Concorde and even prospective buyers who, unlike Concorde, had not yet signed distributorship agreements. This more than adequate grounds for a jury to conclude that Concorde could have received a much better price, even the "best price" Moloney promised.

Finally, we add that the jury's award of $77,805 is a conservative estimate of Concorde's actual damages. Giving Concorde the benefit of the bargain it expected from Moloney's "best price" promise is the minimum measure of Concorde's actual damages. Concorde purchased 28 limousines from Moloney. The price list from the "mystery letter", the accuracy of which Moloney admits, shows that Concorde paid $3700 more than Moloney's second best price for each limousine and $2500 more than Moloney's average price.[16] On this basis alone, an award of actual damages anywhere in the range of $70,000 to $103,600 would be reasonable.[17] Accordingly,

---

**14.** *See Pope*, 703 F.2d at 202. *See also* Curry, The 1979 Amendments To The Deceptive Trade Practices—Consumer Protection Act, 32 Baylor L.Rev. 51, 60 (1980); Goodfriend and Lynn, Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act, 33 S.W.L.J. 941, 979–80 (1979).

**15.** Dr. Pedro Rubio, Concorde's owner, testified that the "best price" representation was one of the most important factors in his decision to commit Concorde to the distributorship, Record, Vol. II at 109–110, and that, without that promise, Concorde would not have entered into the agreement. *Id.*, Vol. II at 48. Richard Lullo, Concorde's president, testified that the representation was the single most important factor. *Id.*, Vol. III at 86–87, 89–92.

**16.** This information is corroborated by other evidence of the prices Moloney charged its other buyers, most of it uncontraverted. *See* Plaintiff's exhibits 15, 30, 33, 41, 45–51, 54. In the face of this overwhelming evidence, Moloney contends that the district court committed reversible error by admitting a summary of this price information, prepared by Concorde and based upon, among many other things, two price invoices not elsewhere admitted into evidence. *See* Plaintiff's exhibit 34. This challenge is meritless. Moloney's arguments that the district court abused its discretion by admitting the evidence are unconvincing. *See Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 532 (5th Cir.1986); *Pregeant v. Pan American World Airways, Inc.*, 762 F.2d 1245, 1248 (5th Cir.1985). The summary's underlying documents were Moloney's invoices and price lists, all of which—including the two not otherwise admitted into evidence—were in Moloney's own files, available for Moloney's examination as required by Fed.R.Evid. 1006. In any event, the erroneous admission of cumulative evidence such as this summary is harmless error. *Hansen v. Johns-Manville Prod. Corp.*, 734 F.2d 1036, 1040 (5th Cir.1984), *reh'g denied*, 744 F.2d 94, *cert. denied*, 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 306–07 (5th Cir.1978).

**17.** Moreover, because the difference between $16,500 and the "best price" Moloney promised Concorde was not the only harm Concorde may have suffered, the jury reasonably could have awarded damages above this range. For example, Concorde's officers testified that because other Moloney dealers, particularly those in nearby states, were able to charge lower prices than Concorde, Concorde's sales were undercut. Record Vol. II at 48; Vol. III at 92. It was not, however, unreasonable for the jury to discount the testimony of Concorde's officers or refuse speculation about damages beyond the minimum.

we affirm the district court's damages judgment against Moloney.[18]

## II.

Because Concorde prevailed on its DTPA claim, an award of court costs and "reasonable and necessary" attorney's fees was mandatory.[19] Like the other provisions of the DTPA, the mandatory award of attorney's fees to prevailing plaintiffs is to be construed liberally "to provide consumers with an efficient and economical means to seek redress for [ ] deceptive practices".[20] Although prevailing DTPA plaintiffs must usually allocate fee expenses between their winning and losing claims,[21] allocation is not necessary where there is a substantial overlap among the claims.[22]

Concorde submitted evidence that it incurred $21,779 of attorney time, $4324 of paralegal time, and $2257 in "related expenses" preparing all its claims, but did not allocate fee expenses between its DTPA claim and its other claims.[23] The district court, over Moloney's objections, required no allocation and awarded Concorde $25,000 in attorney's fees.[24]

Moloney contends that there was not a substantial overlap in Concorde's

---

**18.** Concorde argues that, because Moloney failed to move for a directed verdict, our review of Moloney's challenge to the sufficiency of the evidence is limited to a determination of

> "whether there was *any* evidence to support the jury's verdict" irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a "manifest miscarriage of justice."

*Coughlin,* 571 F.2d at 297 (quoting *American Lease Plans, Inc. v. Houghton Construction Co., Inc.,* 492 F.2d 34, 35 (5th Cir.1974), and *Little v. Bankers Life & Casualty Co.,* 426 F.2d 509, 511 (5th Cir.1970)). *See also Smith v. State Farm Fire & Casualty Co.,* 695 F.2d 202, 205 (5th Cir.1983). Moloney responds that, under this court's liberal construction of Fed.R.Civ.P. 50(b), it adequately informed the court of its challenge to the sufficiency of the evidence by reserving (but not making) a motion for directed verdict and later moving for judgment notwithstanding the verdict. *See Adjusters Replace-A-Car, Inc. v. Agency Rent-A-Car, Inc.,* 735 F.2d 884, 888 n. 3, *reh'g denied,* 741 F.2d 1381 (5th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 910, 83 L.Ed.2d 924 (1985). Accordingly, Moloney contends, we should review the evidence here according to the standard of *Boeing Co. v. Shipman:*

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-movers case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion.

411 F.2d 365, 374 (5th Cir.1969). Whether this is true is unclear, but irrelevant to our decision. Even applying the *Boeing Co.* standard, we find more than enough support in the record for the jury's verdict.

**19.** Tex.Bus. & Comm.Code Ann. § 17.50(d) (Vernon Supp.1987). *See, e.g., Hennessey v. Skinner,* 698 S.W.2d 382, 386 (Tex.Civ.App.—Houston 1985); *Mouton v. Cassello,* 693 S.W.2d 556, 559 (Tex.Civ.App.—San Antonio 1985); *Joseph v. PPG Industries, Inc.,* 674 S.W.2d 862, 867 (Tex.Civ.App.—Austin 1984); *Lubbock Mortgage &*

*Investment Co., Inc. v. Thomas,* 626 S.W.2d 611, 615 (Tex.Civ.App.—El Paso 1981); *Doerfler v. Espensen Co.,* 659 S.W.2d 929, 931 (Tex.Civ.App.—Corpus Christi 1983).

**20.** *McKinley v. Drozd,* 685 S.W.2d 7, 9 (Tex. 1985) (DTPA plaintiff awarded attorney's fees even where DTPA award entirely offset by opposing claim).

**21.** *See Marcotte v. American Motorists Ins. Co.,* 709 F.2d 378, 381 (5th Cir.1983); *First Nat'l Bank of Commerce v. Anderson Ford-Lincoln Mercury, Inc.,* 704 S.W.2d 83, 85 (Tex.Civ.App.—Dallas 1985). *See also Int'l Security Life Ins. Co. v. Finck,* 496 S.W.2d 544, 546–47 (Tex.1973); *Kosberg v. Brown,* 601 S.W.2d 414, 418 (Tex.Civ.App.—Houston 1980).

**22.** *Building Concepts, Inc. v. Duncan,* 667 S.W.2d 897, 904 (Tex.Civ.App.—Houston 1984); *Schepps Grocery Co. v. Burroughs Corp.,* 635 S.W.2d 606, 611 (Tex.Civ.App.—Houston 1982); *Bellefonte Underwriters Insurance v. Brown,* 663 S.W.2d 562, 585 (Tex.Civ.App.—Houston 1983), *aff'd in part and rev'd in part on other grounds,* 704 S.W.2d 742 (Tex.1986); *First–Wichita National Bank v. Wood,* 632 S.W.2d 210, 215 (Tex. Civ.App.—Fort Worth 1982). The Texas courts allow recovery for fees in substantially overlapping claims even if part of the fees are incurred in an entirely separate lawsuit. *See Williamson v. Tucker,* 615 S.W.2d 881, 892 (Tex.Civ. App.—Dallas 1981).

**23.** Record, Vol. VI at 3–4. Concorde also submitted evidence of $8,375 in expert witness fees. *Id.* Testimony by the plaintiff's attorney is adequate support for a DTPA fee award. *Blumenthal v. Ameritex Computer Corp.,* 646 S.W.2d 283, 287 (Tex.Civ.App.—Dallas 1983); *Chrysler-Plymouth City, Inc. v. Guerrero,* 620 S.W.2d 700, 706–07 (Tex.Civ.App.—San Antonio 1981); *Chrysler Corp. v. Schuenemann,* 618 S.W.2d 799, 807 (Tex.Civ.App.—Houston 1981). *See also Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155, 161 (Tex.1945).

**24.** Record, Vol. VI at 6–8.

claims and, as a result, the fee award erroneously compensates Concorde for work done on its losing claims.[25] We cannot agree. The district court found a substantial overlap and determined Concorde's "reasonable and necessary" attorney's fees as a trier of fact. Accordingly, we can reverse its award only if it is "clearly erroneous".[26] It is not.

■ We agree with the district court that there was a substantial overlap in Concorde's preparation of its three claims. As we discuss above, to prevail on its DTPA claim, Concorde was required to prove only that Moloney misrepresented a material fact and that this was a producing cause of its damages. Under the DTPA, Concorde may recover actual damages regardless of Moloney's intent; proof of "Knowing" misrepresentation gives the jury discretion to award punitive damages up to three times actual damages.[27] To prevail on its fraud claim, Concorde was required to prove 1) that Moloney misrepresented a material fact, 2) that Moloney knew of the misrepresentation and intended Concorde to rely upon it, and 3) that the misrepresentation was the proximate cause of Concorde's damages.[28]

Recovery on the fraud claim is plainly more difficult than on the DTPA claim, but this does not imply any difference in the competent preparation of the two claims. At bottom, the difference is in the burden of pursuasion, not in what an attorney must do to bring the claim. It is not surprising then, that Concorde's DTPA and fraud claims are based upon the same operative facts.[29] Both center on Moloney's "best price" promise and the evidence of Moloney's pricing that proved Concorde did not receive the "best price".

We recognize that the overlap in Concorde's claims is not complete. Concorde included as part of its fraud claim Moloney's alleged use of the market survey to induce Concorde to become a Moloney distributor. Concorde did not include this allegation in its DTPA claim. Concorde's breach of contract claim was based on an alleged agreement that Moloney would reimburse Concorde for 50 percent of its advertising costs. This too was not part of Concorde's DTPA claim.

Nonetheless, the overlap, although not complete, was substantial. Our review of the record convinces us that the parties

**25.** Moloney also contends that paralegal time is not recoverable as part of attorney's fees. We see no merit in this challenge. The trier of fact has a great deal of discretion to set a "reasonable" fee award. *See Gulf Paving,* 188 S.W.2d at 160–61; *Terminix Int'l, Inc. v. Lucci,* 670 S.W.2d 657, 666 (Tex.Civ.App.—San Antonio 1984). Treating reasonable paralegal fees and other work by nonlawyers as part of attorney overhead is no abuse of this discretion. We can find only two Texas cases that deal with attorney's fee awards and mention paralegal expenses; neither disapprove of the award because they include paralegal expenses. *See Dorchester Gas Producing Co. v. The Harlow Corp.,* 743 S.W.2d 243 (Tex.Civ.App.1987); *Naaman v. Naaman,* Nos. B14–84–283–CV & C14–83–825–CV, slip op. (Tex.Civ.App.—Houston Jan. 3, 1985). This court has long recognized that the work of paralegals and other nonlawyers is compensable as part of attorney's fees under the federal civil rights laws. *See Richardson v. Byrd,* 709 F.2d 1016, 1023 (5th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Jones v. Armstrong Cork Co.,* 630 F.2d 324, 325 n. 1 (5th Cir.1980); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974). *See also Falcon v. General Tel. Co.,* 463 F.Supp. 315, 321

(N.D.Tex.1978), *rev'd in part on other grounds,* 626 F.2d 369 (5th Cir.1980); *Guajardo v. Estelle,* 432 F.Supp. 1373, 1388 (S.D.Tex.1977), *rev'd in part on other grounds* 580 F.2d 748 (5th Cir. 1978). There is no reason to treat those expenses differently here.

**26.** Fed.R.Civ.P. 52(a). *See Moody v. United States,* 783 F.2d 1244, 1247 (5th Cir.1986). *See also Gulf Paving,* 188 S.W.2d at 160; *Terminix Int'l, Inc.,* 670 S.W.2d at 666.

**27.** Tex.Bus. & Comm.Code Ann. § 17.50(b)(1) (Vernon Supp.1987). The jury found that Moloney acted "knowingly", but declined any punitive damage award. Record Vol. I at 45.

**28.** *See* 41 Tex.Jur.3d, Fraud and Deceit § 7 at 246–47 (1981) (elements of action); *Id.* § 121 at 404–05 & n. 66 (proximate cause).

**29.** At least one Texas court has recognized the substantial overlap between common law fraud and DTPA claims. *West v. Carter,* 712 S.W.2d 569, 573 (Tex.Civ.App.—Houston 1986). The *West* court held that where the same facts are the basis for both fraud and DTPA claims, plaintiffs are entitled to fees under the DTPA despite fees being nonrecoverable in fraud actions. *Id.*

spent the great preponderance of their time on the dispute over Moloney's "best price" misrepresentation. Even if the record were not so clear, the district court is entitled to deference on this point: it has been actively involved in this case from start to finish and is in a particularly advantageous position to judge the effort expended on each of the claims.[30] All this considered, we cannot call the district court's fee award "clearly erroneous".

### III

■ We now address Concorde's cross appeal for prejudgment interest. The Texas law of prejudgment interest can fairly be described as bewildering. Beginning in the late nineteenth century, Texas courts developed the rules of prejudgment interest as a matter of equity.[31] As the Texas Supreme Court explained in *Phillips Petroleum Co. v. Stahl Petroleum Co.*, the principle guiding this development is that plaintiffs should be compensated for any delay in the receipt of monies due them.[32] Plaintiffs are not made whole by damages awarded at the time of judgment when the damages accrue beforehand.

But because prejudgment interest developed in derogation of the common law, the older Texas cases professed to limit it to circumstances that fit within the terms of the Texas interest statute.[33] Even in the early development of the law, however, the Texas courts construed the statute liberally to award prejudgment interest whenever possible.[34] The result was a jumble of rules and exceptions that grew as the Texas courts expanded the scope of prejudgment interest in the name of equity.[35]

In 1985, this body of law was simplified by *Cavnar v. Quality Control Parking.*[36] In *Cavnar*, the Texas Supreme Court applied the equitable principles discussed in *Stahl Petroleum Co.* and held:

> The time has come to revise the prejudgment interest rule to make injured parties whole and restore equity and symmetry to this area of the law. We therefore hold that, as a matter of law, a prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365–day year) on damages *that have accrued by the time of judgment.* . . . Prejudgment interest shall accrue at the prevailing rate that exists on the date judgment is rendered according to the provisions of Tex.Rev.Civ.Stat.Ann. art 5069–1.05 § 2 (Vernon Supp.1985).[37]

30. *See Guajardo,* 432 F.Supp. at 1388. We also note that the district court did not award the full $28,360 Concorde alleged in attorney time, paralegal time, and "related expenses". Although the district court does not indicate the reason for this reduction, absent any contrary evidence, we assume it reflects the court's determination of the expense Concorde devoted to its losing claims.

31. *See, e.g., Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11, 11–12 (1897). *See also Phillips Petroleum Co. v. Adams,* 513 F.2d 355, 365 (5th Cir. 1975) (discussing history of prejudgment interest in Texas).

32. 569 S.W.2d 480, 485 (Tex.1978).

33. *See Watkins,* 40 S.W. at 12; *Heidenheimer v. Ellis,* 67 Tex. 426, 3 S.W. 666, 667 (1887). *See also Adams,* 513 F.2d at 365. The Texas interest statute currently provides:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). The present act derives from Tex.Rev. Civ.Stat. art. 2977 (1879). The Texas legislature last amended the statute to change the rate in 1892. Tex.Acts 1892 p. 4.

34. *See e.g., Watkins,* 40 S.W. at 11; *Heidenheimer,* 3 S.W. at 667. *See also Stahl Petroleum,* 569 S.W.2d at 486–87; *Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80, 95–96 (Tex. 1976); *Adams,* 513 F.2d at 365–68.

35. *See Cavnar v. Quality Control Parking,* 696 S.W.2d 549, 553 (Tex.1985); *Crown Central Petroleum Corp. v. National Union Fire Ins. Co.,* 768 F.2d 632, 634–35 (5th Cir.1985).

36. 696 S.W.2d 549.

37. *Id.* at 553–54 (original emphasis). Article 5069–1.05 sets out the postjudgment interest rates for the judgments of Texas courts. Section 2, used by *Cavnar* to set the prejudgment interest rate, was written as the rule for postjudgment interest in non-contract cases. This rule establishes a rate that fluctuates between a minimum of 10 percent and a maximum of 20 percent according to the interest rate on the

Under *Cavnar*, damages need not be liquidated to form the basis for prejudgment interest; it is sufficient that they are readily ascertainable and established as of a definite time.[38]

*Cavnar* also restricts trial court discretion in the award of prejudgment interest. As the Texas Supreme Court stated in *Matthews v. DeSoto:*

> The policies underlying *Cavnar* would not be advanced by giving the trial court discretion in determining the amount of prejudgment interest. Our decision was based on the equitable grounds that an injured party should be made whole. A plaintiff should be compensated for the defendant having beneficial use of the damage funds between the time of the occurrence and judgment. Prejudgment interest is not intended to punish the defendant's misbehavior. It merely compensates the plaintiff for being denied the opportunity to invest and earn interest on the amount of damages.[39]

In *Matthews*, the court refused to permit a reduction in the award of prejudgment interest simply because the trial court found that a plaintiff used dilatory tactics in bad faith to prevent resolution of the lawsuit:

> A dilatory penalty would not enhance full and fair compensation because the plaintiff is still deprived of the use of his funds.... Additionally, trial court discretion with regard to the amount of prejudgment interest would further complicate the trial process and often require a trial within a trial on the issue of the plaintiff's possible dilatory conduct.[40]

According to the court, a reduction in the award was unnecessary because "the defendant [had] several tools to force the case to trial such as objecting to the granting of continuances, objecting to the passing of the case, and moving for a special trial setting".[41]

We read *Cavnar* and *Matthews* as creating a regime in which equitable prejudgment interest is awarded as matter of course when the trier of fact finds that damages accrued before the time of judgment.[42] Unless the trial court cannot address through other means any equitable concerns that favor the defendant, reduction in the award of interest, even to the point of elimination, is impermissible under *Matthews*. In all but these exceptional circumstances, *Cavnar* requires that prevailing plaintiffs receive prejudgment interest at the rate established by Tex.Rev.Stat. Ann. art. 5069–1.05 § 2.[43] If a trial court finds such exceptional circumstances, it should explain them. In this case, the district court denied prejudgment interest without explanation.

Texas courts have long applied the principles clarified in *Cavnar* to award pre-

Federal Reserve Board's most recent monthly auction of United States treasury bills. Tex.Rev. Stat.Ann. art. 5069–1.05 § 2 (Vernon 1987).

**38.** *Cavnar,* 696 S.W.2d at 551–55. *See also Black Lake Pipe Line,* 538 S.W.2d at 95–96.

**39.** 721 S.W.2d 286, 287 (Tex.1986) (per curiam) (citations omitted).

**40.** *Id.*

**41.** *Id.*

**42.** In *Matthews,* the court apparently chose only to decide that a trial court has no discretion to decrease the percentage of interest which a prevailing party can recover. *Compare id.* at 286 ("The court of appeals stated that a trial court may *reduce* or *eliminate* a plaintiff's prejudgment interest award.") (emphasis added) *with id.* at 287 ("We disapprove the court of appeals language that a trial court has the discretion to *reduce* a plaintiff's prejudgment interest

award.") (emphasis added). Nonetheless, its analysis applies equally to those situations where a court exercises discretion to completely deny equitable prejudgment interest.

**43.** We recognize that two intermediate Texas courts apparently read *Cavnar* to permit the trial court the discretion of deciding in the first place whether or not to award prejudgment interest. *See Perry Roofing Co. v. Olcott,* 722 S.W.2d 538, 545 (Tex.Civ.App.—Fort Worth 1986, writ granted) ("the only discretionary power of the judge in awarding prejudgment interest is in his decision of whether or not to award interest"); *Acco Constructors, Inc. v. National Steel Products,* 733 S.W.2d 368, 371 (Tex. Civ.App.—Houston, 1987) ("Once the trial court determined that appellant was entitled to prejudgment interest, it had no discretion in determining the amount of prejudgment interest."). Neither of these cases mention *Matthews,* however, and neither contains any indication that the scope of this discretion is broader than we hold.

judgment interest in DTPA cases[44] and lost profits cases.[45] Those principles should apply here. Concorde's damages are readily ascertainable by calculating the amount of Moloney's overcharges. Concorde's damages accrued over time, but they were fully accrued by December 30, 1983, when Concorde paid for its last Moloney limousine. Unless the district court can find and explain the exceptional circumstances required to deny prejudgment interest, Concorde is entitled to prejudgment interest at the *Cavnar* rate. At the time of this judgment, that rate of interest was 10 percent,[46] compounded daily.[47]

Finally, Moloney argues in its briefs that *Cavnar* "did not dispense with the pleading requirement for prejudgment interest sought at common law", nor did it suspend the Texas rules of procedure that require the judgment to conform with the pleadings.[48] But as Moloney acknowledged in oral argument, this is not an issue here. Concorde's pleadings for prejudgment interest are fully in compliance with the pleading rules of the federal courts.[49] It is irrelevant that Concorde specifically requested equitable prejudgment interest at 11.5 percent rather than at the *Cavnar* rate. Concorde's request for prejudgment interest was clearly before the district court.[50]

Accordingly, we AFFIRM the district court's award of damages and attorney's fees, but REMAND the cause to the district court for either an explanation of the exceptional circumstances that justify deni-

al of prejudgment interest or amendment of the judgment to include prejudgment interest at the rate of 10 percent, compounded daily, from December 30, 1983.

---

**44.** *See, e.g., Quintero v. Jim Walter Homes, Inc.,* 709 S.W.2d 225, 230–31 (Tex.Civ.App.—Corpus Christi 1985); *Rotello v. Ring Around Products, Inc.,* 614 S.W.2d 455, 462 (Tex.Civ.App.—Houston 1981).

**45.** *See, e.g., Ewing v. Wm. L. Foley, Inc.,* 115 Tex. 222, 280 S.W. 499, 504 (1926); *Ralston Purina Co. v. Barkley Feed & Seed Co., Inc.,* 722 S.W.2d 431, 435 (Tex.Civ.App.—Houston 1986). *See also Cavnar,* 696 S.W.2d at 553.

**46.** *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 § 2 (Vernon 1987).

**47.** 696 S.W.2d at 554.

**48.** *Benavidez v. Isles Constr. Co.,* 726 S.W.2d 23, 25 (Tex.1987). *See also Vidor Walgreen Pharmacy v. Fisher,* 728 S.W.2d 353 (Tex.1987). Mo-

loney contends that Concorde's pleadings would not be sufficient to allow a Texas court to award it prejudgment interest.

**49.** *See Bowers v. Firestone Tire & Rubber Co.,* 800 F.2d 474 (5th Cir.1986):

While substantive questions of the entitlement to interest are resolved by applying the relevant state authorities, the adequacy of the pleadings must be resolved through the guidance of the Federal Rules of Civil Procedure. *Id.* at 479.

**50.** *Id.* ("In diversity cases it is not necessary for the plaintiff to specifically plead prejudgment interest"). *See also Crown Central Petroleum,* 768 F.2d at 638.