# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 17, 2010

No. 09-20234

Lyle W. Cayce
Clerk

MEAUX SURFACE PROTECTION, INC.,

Plaintiff - Appellee Cross-Appellant

v.

MIKE FOGLEMAN; CLEANBLAST, LLC; CHARLIE KOTRLA,

Defendants - Appellants Cross-Appellees

Appeals from the United States District Court
for the Southern District of Texas

Before DeMOSS, ELROD, and HAYNES, Circuit Judges.

DeMOSS, Circuit Judge:

In this diversity jurisdiction case, we review a jury verdict and judgment in favor of Plaintiff Meaux Surface Protection, Inc. ("Meaux") on a claim for breach of fiduciary duty. Defendants Mike Fogleman, Charlie Kotrla, and CleanBlast, LLC (collectively "defendants") contend that the district court abused its discretion in allowing an eleventh-hour amendment of the pretrial order, and erred in failing to grant defendants' motions for judgment as a matter of law. Meaux cross-appeals the denial of prejudgment and post-judgment interest. After careful review, we find no reason why we should upset the jury verdict and judgment. However, we order that that the case be remanded to its

port of call for the district court to consider the appropriateness of prejudgment interest and to award post-judgment interest.

## I. FACTS AND PROCEDURE: MUTINY ABOARD MEAUX

Meaux is in the maritime sandblasting and painting business. It is a Texas corporation and a wholly owned subsidiary of Muehlhan AG ("Muehlhan"), based in Germany, which acquired Meaux in 2003. Mike Fogleman was a project manager for Meaux at that time; he took the helm as Meaux's president in late 2005. Charlie Kotrla was an operations manager for Meaux. Both are Louisiana citizens. In December 2006, Fogleman and Kotrla resigned and, via their jointly owned venture CleanBlast, LLC, began competing with Meaux.[1] When Fogleman and Kotrla left, many of Meaux's work crews and clients soon sailed with the tide, defecting to CleanBlast. Smelling a rat, Meaux sued defendants in Texas state court in early 2007, contending that Fogleman and Kotrla had surreptitiously and unlawfully poached employees and clients while working for Meaux. Defendants removed the case to federal court. Meaux's state-court petition, which remained the operative pleading, alleged, *inter alia*, that its "loss of business" due to defendants' actions was "significant."

The district court entered a scheduling order on September 12, 2007, which set a deadline of January 31, 2008 for amended pleadings. Meaux did not file an amended complaint. Per the court's scheduling order, the parties filed a joint pretrial order on October 31, 2008. Meaux's statement of the case relayed the thrust of the facts recounted above, but did not indicate what remedies Meaux sought. Along with the pretrial order, the parties filed proposed jury instructions and witness lists. Meaux's submission included a jury instruction and interrogatory for lost profits, past and future, caused by defendants' actions.

---

[1] Because Fogleman and Kotrla are the members of CleanBlast, it is deemed a Louisiana citizen for purposes of this litigation. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

In a simultaneously filed witness list, Meaux designated Muehlhan's Chief Financial Officer, Carsten Ennemann, as a witness "familiar with the financial damages sustained by Meaux."

A final pretrial conference was set for February 17, 2009. The parties would embark on jury selection and trial the next day. On February 16, 2009, defendants filed a brief in opposition to Meaux's requested jury instructions for lost profits. Defendants asserted that Meaux's failure to state that it sought lost profits in the body of the pretrial order meant such claim was waived. At the pretrial conference on February 17, the district court indicated that it would allow Meaux to amend the pretrial order to conform its claims to those presented in its pleadings. The court preliminarily stated that it would not allow Meaux to insert claims which had not heretofore been raised. The court reserved ruling pending further briefing. Meaux filed a brief asserting that, under *Rockwell International Corp. v. United States*, 549 U.S. 457, 474 (2007), it could raise lost profits for the first time in the pretrial order. Defendants disagreed and filed a motion to dismiss Meaux's claims under Federal Rule of Civil Procedure 12(b)(6).

The following day, February 18, the court tentatively stated that it would allow amendment of the pretrial order, but only to conform to the pleadings. On the second day of trial, February 19, after considering additional arguments and authorities, the court charted a new course. It first noted that Meaux's original state-court petition had asserted that defendants' tortious acts caused Meaux to suffer lost revenues and actual damages. Moreover, defendants filed pretrial motions concerning lost profits, including a motion to compel production of documents pertinent to lost profits and a summary judgment motion challenging Meaux's evidence of damages. The court pointed out that defendants at no time asserted that Meaux failed to plead lost profits with sufficient specificity to satisfy federal notice pleading standards. Moreover, the court's own procedures manual indicated that "counsel shall submit as part of the Final Joint Pretrial

Order proposed jury instructions." Meaux had included lost profits instructions in its proposed jury instructions. Defendants did not argue that this was insufficient under the local rules until just before trial. The court reasoned: "Given the foregoing, it cannot be said that the defendants were totally unaware of or surprised by the plaintiff's claim for lost profits submitted in the proposed jury instruction or unprepared to litigate this issue at trial." The court further found that "modification of the Pretrial Order to include lost profits is warranted to prevent substantial injustice." Thus, the court held that lost profits could be submitted to the jury.

At trial, Meaux called Ennemann to testify about lost profits for fiscal year 2007. Defendants objected that Ennemann lacked personal knowledge regarding the operations and profits of Meaux's business, and that Meaux had failed to designate him to testify about these matters. The court overruled the objection, but indicated that defense counsel could take Ennemann on voir dire before the jury to challenge his familiarity with Meaux's operations and profitability. Counsel did so. Ennemann's testimony revealed that accounting and budgeting data produced at Meaux were regularly transmitted back to the mother ship in Germany. As CFO of Muehlhan, Ennemann monitored Meaux's financials and was cognizant of factors affecting Meaux's profitability, such as oil prices and hurricane activity in the Gulf of Mexico. Defense counsel also objected that at the time of his deposition, Ennemann was not familiar with all relevant facts and source documents concerning Meaux's accounts and budgeting. He became familiar with such matters after his deposition. Counsel moved to disallow Ennemann's testimony on the basis of unfair surprise. The court denied the motion, reasoning that defense counsel had the documents prior to the deposition and could have used the documents to demonstrate Ennemann's purported lack of familiarity with Meaux's business practices.

In sum, the court held, and explained to the jury, that Ennemann was not an expert witness, but rather a corporate fact witness whom Meaux would present to estimate the lost profits suffered by Meaux in 2007 as a result of CleanBlast's efforts to corral its employees and clients. The court observed that Ennemann was familiar with such matters in his capacity as CFO of Muehlhan, and that a lack of specificity or detail in his familiarity with day-to-day operations at Meaux should affect the weight assigned to his testimony by the jury. Ennemann then explained month-by-month and client-by-client the projected revenues and actual revenues received. The projected revenue figures came from a 2007 budget report prepared by Fogleman himself prior to his departure. In total, Ennemann estimated that Meaux lost $2.3 million in 2007 due to defendants' malfeasance. At trial, Fogleman stood by his budget figures as reasonable estimates of revenues.

At the close of Meaux's case and at the close of evidence, defendants moved for judgment as a matter of law, which the court denied. The court charged the jury, which returned a verdict in favor of Meaux and awarded $1.43 million in lost profits. The court entered judgment on February 24, 2009. Defendants re-urged their motions for judgment as a matter of law or a new trial. Meaux moved the court to amend judgment to add pre- and post-judgment interest. The court denied all motions without stating reasons. This appeal followed.

## II. AMENDMENT: THE UNKNOWN SHORE

Defendants first argue that the amendments to the pretrial order allowed Meaux "to engage in trial by ambush." Defendants insist that the absence of the precise term "lost profits" in the pretrial order led them to the "inescapable conclusion that Meaux's theory of damages would not include lost profits." They contend that the at-trial amendments to the pretrial order left no time to depose additional witnesses or obtain an expert to counter Meaux's lost profits projections and calculations. Meaux responds that it was perfectly apparent

throughout discovery and pretrial litigation that it would seek lost profits. Meaux notes that lost profits were mentioned in its proposed jury charge, which was filed simultaneously with, and pursuant to local rule was deemed part of, the pretrial order. Moreover, defendants sought discovery on Meaux's lost profit claim and unsuccessfully sought summary judgment on the claim. Thus, any claim of "ambush" is an unfathomable yarn.

## A. TWO YEARS BEFORE THE AMENDMENT

We review district court decisions regarding amendment of pretrial orders for abuse of discretion. *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002). "Because of the importance of the pre-trial order in achieving efficacy and expeditiousness upon trial in the district court, appellate courts are hesitant to interfere with the court's discretion in creating, enforcing, and modifying such orders." *Id.* (quoting *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982)). It is axiomatic that under Federal Rules of Civil Procedure 15 and 16, a final pretrial order "supersede[s] all prior pleadings." *Rockwell Int'l*, 549 U.S. at 474 (citations omitted). After a scheduling order deadline has passed, a party must show good cause to obtain leave to amend the operative pleadings. *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003) (citing FED. R. CIV. P. 16(b)). The district court's discretion to allow amendment or modification of a pretrial order is guided by the following factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (citations and internal alterations omitted).

The district court did not abuse its discretion in allowing Meaux to seek lost profits. Defendants assert that the district court allowed amendment of the pretrial order because this was Meaux's counsel's first federal trial, which is not a reasonable excuse. The court did acknowledge that it gave some leeway in

light of counsel's lack of experience. This explanation is far from persuasive, and weighs in defendants' favor. *See id.* at 536 (noting that "inadvertence" as an explanation "is tantamount to no explanation at all"). However, the court's remarks in this regard were minor relative to its careful sounding of other germane factors, which reveal that there was good cause to allow amendment. The court recognized that the amendment was very important to Meaux's case. *See id.* Without lost profits, Meaux would have no remaining theory of recovery. Because disallowing the amendment would have left Meaux dead in the water, the court held that modification of the pretrial order was "warranted to prevent substantial injustice." This finding is watertight.

Additionally, the prejudice to defendants was minor. *See id.* at 536-37. In the two years between filing and trial, defendants obtained discovery and filed motions concerning lost profits. Meaux's inclusion of lost profits instructions, which the court deemed part of the pretrial order, gave defendants a warning shot across the bow months in advance of trial that this remedy was not abandoned. It is unpersuasive for defendants to say that they believed otherwise, especially when the pretrial order and proposed jury instructions made no reference to other remedies. Defendants repeatedly bewail the "ambush" they suffered when the district court allowed Meaux's case to proceed. As did the district court, we find such protestations empty and disingenuous. Defendants were not waylaid by guerilla litigation tactics. Being denied the ability to prevail on a technicality is not the kind of "prejudice" we must remedy.

Finally, a continuance was impracticable because trial was imminent. The unfortunate timing was largely defendants' fault. Defendants could have challenged at any time that Meaux's request for lost profits, either in the original petition or the pretrial order, adequately met federal pleading standards and the requirements of local rules. Defendants waited to do so, quite literally, until the eve of trial. As far as the district court was concerned, the ship had

sailed. In light of the facts and circumstances present in this case and the solicitude we afford the district court's hand on the tiller of trial management, we cannot conclude that the court abused its discretion in allowing Meaux to seek lost profits at trial. *See id.*; *Quick Techs.*, 313 F.3d at 345.

### B. H.M.S. SURPRISE WITNESS

Defendants also contend that they were "ambushed" by Meaux's decision to have Carsten Ennemann testify about lost profits, and not Rene Godoy, who took over as president of Meaux after Fogleman's resignation. Wrong again. Whether we view the court's decision to allow Ennemann to testify about lost profits as a modification of the pretrial order or a ruling on the propriety of the designation of the witness, we review for abuse of discretion. *See Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). Defendants contend that when they deposed Ennemann, he denied having knowledge of the underlying documents Meaux would rely on at trial to prove its quantum of damages. At trial, the court rejected defendants' assertion that allowing Ennemann to present such evidence was unfair surprise. Counsel had the relevant documents prior to Ennemann's deposition and could have questioned him to plumb his familiarity, or lack thereof, with Meaux's operations and profitability. At trial, the district court allowed counsel to engage in voir dire to test Ennemann's knowledge. The court concluded that Ennemann had personal knowledge of Meaux's profitability, which he garnered in his capacity as CFO of Muehlhan. The foregoing conclusion is well supported in the court's log.

Moreover, Meaux timely designated Ennemann in the pretrial order as a fact or lay opinion witness. *See United States v. Valencia*, 600 F.3d 389, 416 & n.4 (5th Cir. 2010) (recognizing that corporate officer who provides projections or opinions about changes in profits is not an expert witness, but rather, a lay witness under Federal Rule of Evidence 701); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) (same). As such, the

heightened disclosure requirements for an expert witness were not implicated. *Cf.* FED. R. CIV. P. 26(a)(2); *Bradley v. United States*, 866 F.2d 120, 126-27 (5th Cir. 1989) (holding that district court abused its discretion in allowing late-designated expert witnesses to testify). Ennemann works on the starboard side of the Atlantic and does not personally observe Meaux's day-to-day operations. He does not paint oil rigs or sandblast ships. However, as Chief Financial Officer, he is intimately familiar with Meaux's financial performance. It would defy reason to say that the district court abused its discretion in allowing him to testify about such matters. Finally, there was no surprise in Meaux's election to call Ennemann to testify, and not Rene Godoy. Meaux designated Ennemann in the pretrial order as a witness "familiar with the financial damages sustained by Meaux." Merely because Godoy could have also testified about these matters as well does not mean he had to. In sum, defendants have not shown that the court abused its discretion in allowing Ennemann's testimony to reach the jury.

## III. TREASON'S HARBOUR

Defendants next say they are entitled to judgment as a matter of law because the evidence (1) did not establish that their breach of fiduciary duties caused Meaux to suffer losses, and (2) was too speculative to support the jury's award of $1.43 million. Neither harpoon pierces the jury's verdict.

## A. MASTER AND USURPER

We review the district court's denial of a motion for judgment as a matter of law de novo. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004).

> A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. If reasonable persons could differ in their interpretation of the evidence, then the motion should be denied. A post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.

No. 09-20234

> We accord great deference to the jury's verdict when evaluating the sufficiency of the evidence, viewing all the evidence and drawing all reasonable inferences in the light most favorable to the verdict.

*Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 392-93 (5th Cir. 2000) (internal citations and quotations omitted).

To succeed on a claim of breach of fiduciary duty, the plaintiff must show that a fiduciary relationship existed between the plaintiff and defendant, that the defendant breached his fiduciary duty, and that the defendant's breach caused injury to the plaintiff or a benefit to the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citation omitted). Here, defendants do not contest that they had a fiduciary relationship with Meaux, nor that their actions breached a fiduciary duty. Rather, they assert that there has been no showing that their actions caused harm to Meaux. A jury may infer proximate cause from circumstantial evidence. *Id.* at 289 (citations omitted). In *Navigant*, the evidence showed that the defendants solicited fellow employees to join them in defecting to a competitor. *Id.* at 290. Following the defendants' departure, their erstwhile employer lost many key employees to the competitor and experienced a drop-off in business. *Id.* We held that the jury could reasonably conclude, based on this evidence, that the defendants' actions sent the plaintiff's business into a maelstrom. *Id.* at 290-91. "Alert avoidance of the classical fallacy of *post hoc, ergo propter hoc* does not require rejection of common sense inferences." *Id.* at 291 (quoting *Swanner v. United States*, 406 F.2d 716, 718 (5th Cir. 1969).[2]

---

[2] In their reply brief and again at oral argument, defendants suggested that the Texas Supreme Court's decision in *Guevara v. Ferrer*, 247 S.W.3d 662 (Tex. 2007), mandates that a plaintiff introduce expert testimony to establish the element of causation. We normally disregard arguments raised for the first time in a reply brief or at argument. Even so, we do not read *Guevara*, which concerned complex medical causation questions, so expansively as to create an expert testimony requirement for all but the most obvious torts. *See id.* at 668 ("Undoubtedly, the causal connection between some events and conditions of a basic nature . . . are within a layperson's general experience and common sense."). In our view, the present

10

The evidence showed that Fogleman and Kotrla set up CleanBlast several months before they resigned from Meaux. Defendants informed many of Meaux's foremen and staff that they would form a new company, and indicated that several of Meaux's jobs would be commandeered by CleanBlast. Patricia Duhon, an employee of Meaux, testified that prior to resigning, Kotrla actively recruited many of Meaux's employees. Duhon's testimony was that Kotrla said that once Meaux's foremen were working for CleanBlast, CleanBlast would get business from Meaux's clients, because the clients "pretty much followed the foremen." Within days of Fogleman's and Kotrla's resignation from Meaux, several of Meaux's work crews were working under CleanBlast's ensign. In suspiciously short order, CleanBlast also procured insurance, master service agreements ("MSAs"), and job contracts with several of Meaux's largest customers. Meaux's sales to those customers sank like an anchor.

Defendants say Meaux's fusillade of evidence fails to strike below the waterline because Ennemann did not have direct knowledge of the above facts, and because other factors could have caused a drop-off in business. Defendants note that 2006 was a bumper year for their industry due to repairs necessitated by hurricanes Katrina and Rita, and business was somewhat becalmed in 2007. Defendants also say that their lawful competition could have caused a drop in Meaux's business, and note that there is a high degree of turnover in their industry. But defendants cannot navigate a perilous shoal: such arguments are matters for the trier of fact. They do not undermine the legal sufficiency of properly admitted evidence in support of the verdict.

Based on the evidence submitted at trial, the jury was well within its province to find that defendants' recruitment of Meaux's employees was not mere palaver, but rather, directly caused Meaux to suffer a loss in business. *See*

---

case does not present an instance where a jury's judgment is likely to fall prey to the siren song of the *post hoc ergo propter hoc* fallacy.

*id.* at 290-91.   The district court properly denied defendants' motions for judgment as a matter of law as to causation.  *See Thomas*, 220 F.3d at 392-93.

## B. TREASURE ISLAND

So too with regard to the jury's damage award.  The Texas Supreme Court instructs that "[r]ecovery of lost profits does not require that the loss be susceptible to exact calculation." *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (citing *Tex. Instruments v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex.1994)).  Nevertheless, the party claiming injury must show more than some lost profits; "[t]he amount of the loss must be shown by competent evidence with reasonable certainty."  *Id.*   This inquiry is fact intensive. *Id.* (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)).  "At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained." *Id.* (quoting *Heine*, 835 S.W.2d at 84).  The proper measure is lost net profits.  *Heine*, 835 S.W.2d at 83 n.1.  Unless the issues concerning lost profits are "highly technical," expert testimony is not required. *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 532 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Texas law recognizes that for enterprises with a record of profitability, records of past profits, with other relevant facts and circumstances, may support a finding of lost profits. *See Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1098-99 (Tex. 1938).  In contrast, new or unestablished ventures must meet more exacting standards to prove that the profits claimed are not "too uncertain or speculative." *See id.*  The "requirement of 'reasonable certainty' in the proof of lost profits is intended to be flexible enough to accommodate the myriad circumstances in which claims for lost profits arise." *Tex. Instruments*, 877 S.W.2d at 279.  The proper focus is not on the business entity, but on whether the activity in which it engages is generally profitable. *See id.* at 280.

The jury heard an estimate from Carsten Ennemann that Meaux had suffered a $2.3 million loss of treasure in 2007 thanks to their employees-turned-freebooters. Ennemann was personally familiar with the drop in business suffered by Meaux. Ennemann compared 2007 sales figures for several major clients with the budget projections which were prepared by Fogleman himself before he jumped ship. At trial, Fogleman stood by the projections as reasonable estimates of Meaux's likely business, taking into account the factors he deemed relevant. Fogleman's testimony supported Meaux's case; he was keelhauled by his own windlass. In light of the evidence tending to show that defendants' acts harmed Meaux, the jury was entitled to find that Fogleman's and Kotrla's acts in derogation of a fiduciary duty to Meaux harmed it to the tune of $1.43 million. *See Navigant Consulting*, 508 F.3d at 291.

The evidence also showed that Meaux's operations, and marine painting and sandblasting in general, were profitable for many years before Fogleman and Kotrla left to form CleanBlast. Since time immemorial, "[t]hey that go down to the sea in ships, that do business in great waters,"[3] have needed to protect the hulls of their vessels. Because the company and industry were not nascent and untested, copious evidence of lost profits was unnecessary. *See Tex. Instruments*, 877 S.W.2d at 280; *accord Info. Commc'n Corp. v. Unisys Corp.*, 181 F.3d 629, 634 (5th Cir. 1999). Therefore, the evidence the jury heard about lost profits was not so speculative that it was legally insufficient. In this instance, Meaux's election not to provide greater documentation of loss, or failure to preemptively eliminate every potentially contributory factor to profitability, goes to the weight of the testimony, not its sufficiency. *See Heine*, 835 S.W.2d at 84 (noting that supporting documentation is helpful, but not required, to support an estimate of lost profits); *see also Nova Consulting Group, Inc. v. Eng'g Consulting Servs.,*

---

[3] *Psalms* 107:23 (King James).

No. 09-20234

*Ltd.*, 290 F. App'x 727, 739 (5th Cir. 2008) (unpublished) (holding that lost profits were sufficiently proved by examining past profits and a budget prepared by an employee immediately before leaving to form a competing venture). Finally, the jury's award of $1.43 million to Meaux was well within Meaux's estimated $2.3 million loss for 2007. *See Nova Consulting*, 290 F. App'x at 740. In sum, legally sufficient evidence supported the jury's damage award for lost profits. Defendants are not entitled to judgment as a matter of law. *See Thomas*, 220 F.3d at 392-93.

## IV. INTEREST

On cross-appeal, Meaux argues that it is entitled to prejudgment interest as a matter of course under Texas law and post-judgment interest under federal law. Meaux requested pre- and post-judgment interest in its original state-court petition, but did not reassert these requests in the pretrial order. We conclude that the case must be remanded for further consideration of prejudgment interest and an award of post-judgment interest.

### A. PREJUDGMENT INTEREST: SUNKEN TREASURE?

"State law governs the award of prejudgment interest in diversity cases." *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994) (citations omitted). "In the absence of a statutory right to prejudgment interest, Texas law allows for an award of equitable prejudgment interest under *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985)." *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996). Under this standard, "an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." *Id.* (citation omitted).[4]

---

[4] Texas Finance Code § 304.104, cited by Meaux, only applies to cases involving wrongful death, personal injury, or property damage. *See* TEX. FIN. CODE ANN. § 304.101 (Vernon 2006). Claims for breach of fiduciary duty are not covered. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex. 1998) (applying previous version of § 304.101); *Welder v. Green*, 985 S.W.2d 170, 180 (Tex. App.—Corpus Christi 1998,

No. 09-20234

Defendants point out that Meaux omitted from the pretrial order any request for interest. However, "in diversity cases, it is not necessary for the plaintiff's pleadings to contain a prayer or other request for pre-judgment interest." *Consol. Cigar Co. v. Tex. Commerce Bank*, 749 F.2d 1169, 1174 (5th Cir. 1985) (citations omitted). If state substantive law provides for the recovery of interest, Federal Rule of Civil Procedure 54(c) requires that such be included where appropriate. *Id.*; *see* FED. R. CIV. P. 54(c) ("Every [non-default] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). When the pleadings contain a simple prayer for interest on the judgment, this suffices in any case to preserve the request. *See Consol. Cigar*, 749 F.2d at 1174-75; *see also Crown Cent. Petrol. Corp. v. Nat'l Union Fire Ins. Co.*, 768 F.2d 632, 638 (5th Cir. 1985). Defendants' waiver argument is not entirely without support. *See Lindy Inv., LP v. Shakertown Corp.*, 209 F.3d 802, 804 n.1 (5th Cir. 2000) (declining, without citing Rule 54(c), to consider appeal of denial of prejudgment interest because it was omitted from the pretrial order). However, under our rule of orderliness, we are obliged to follow our earlier decision in *Consolidated Cigar*. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). Therefore, we hold that Meaux is not precluded from launching a sortie to recover prejudgment interest.

Meaux and defendants disagree as to the proper standard of review. We need not address this question because the district court did not state reasons for denying interest, depriving us of any basis for review. Therefore, we must vacate the district court's denial of prejudgment interest and remand for further consideration of such request and a more detailed analysis. *See Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 215 (5th Cir. 2006); *Centerpoint Energy*

pet. denied).

No. 09-20234

*Houston Elec. LLC v. Harris County Toll Road Auth.*, 436 F.3d 541, 550-51 (5th Cir. 2006); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1330 (5th Cir. 1994) ("If the district court denies prejudgment interest without explanation, our appropriate course is to remand the issue so that the court may either explain the exceptional circumstances warranting the denial of interest or award interest at the appropriate rate.") (citing *Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*, 835 F.2d 541, 549-50 (5th Cir. 1987)).

### B. POST-JUDGMENT INTEREST: MARINE SALVAGE

Federal law governs post-judgment interest. *Harris*, 15 F.3d at 431 & n.4. Post-judgment interest is awarded as a matter of course. 28 U.S.C. § 1961(a) (2006) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). The matter is not discretionary. *E.g.*, *Reeves v. Int'l Tel. & Tel. Corp.*, 705 F.2d 750, 752 (5th Cir. 1983) ("The failure of the district court to allow post-judgment interest on its original judgment . . . was patently an oversight, for interest was allowable of right, not as a matter of discretion."). Moreover, failure to brief the matter is treated as "oversight, not waiver." *Id.*; *accord Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594 (5th Cir. 2006) (rejecting argument that § 1961 did not apply because prevailing party did not argue it on appeal). Because we will vacate the district court's denial of prejudgment interest, we do so with regard to post-judgment interest as well, and remand for modification of judgment.

### V. CONCLUSION

Defendants' attempts to undermine the verdict are a white whale: elusive and too crafty for their own good. The district court did not abuse its discretion in allowing Meaux to seek the remedy of lost profits and in allowing Carsten Ennemann to testify. Also, the district court correctly denied defendants' motions for judgment as a matter of law. In all respects, the jury verdict is affirmed. However, the district court's denial of interest is vacated and the case

remanded for further consideration and modification consistent with this opinion.

AFFIRMED IN PART; VACATED IN PART; REMANDED.