**FAIRMONT SPECIALTY INSURANCE COMPANY, Plaintiff,**

v.

**Thomas APODACA, Defendant.**

**Civil Action No. H–15–3330**

United States District Court,
S.D. Texas, Houston Division.

Signed February 10, 2017

---

Debra Donaldson Hovnatanian, Bradford Wald Irelan, Irelan Hargis PLLC, Houston, TX, for Plaintiff.

Joseph P. McGuire, McGuire Woods & Bissette, P.A., Asheville, NC, Lewis William Jost, Attorney at Law, Houston, TX, for Defendant.

## ORDER

DAVID HITTNER, United States District Judge

Pending before the Court are Plaintiff's Motion for Summary Judgment and Defendant Thomas Apodaca's Response to Plaintiffs Motion for Summary Judgment and Cross–Motion for Summary Judgment. Having considered the motions, submissions, and applicable law, the Court determines Plaintiff's motion should be granted, and Defendant's motion should be denied.

## I. BACKGROUND

This is a breach of contract claim. Plaintiff TIG Insurance Company ("TIG") seeks contractual indemnification from Defendant Thomas Apodaca ("Apodaca") for TIG's payment of a bail bond forfeiture judgment, which a Maryland court entered approximately sixteen years after initially declaring the bond forfeited. The following facts are undisputed. TIG is the successor-in-interest of Ranger Insurance Company ("Ranger"),[1] a bail bond surety company.

---

1. In 2004, Ranger changed its name to Fairmont Specialty Insurance Company ("Fairmont"). On June 30, 2015 Fairmont merged with TIG.

Apodaca operated Southeastern Sureties ("Southeastern"), a general bail bond agency. On October 10, 1995, Ranger entered into a General Agent Bail Agreement ("Agreement") with Apodaca under which Ranger functioned as an authorized surety for Southeastern's bail bonds. Under the Agreement, Ranger furnished Apodaca with bail bond powers of attorney that Apodaca was solely responsible for administering. The Agreement runs to the benefit of TIG, as Ranger's successor-in-interest.

On March 15, 1999, the State of Maryland filed a criminal action against Anthony Stevenson ("Stevenson"). Stevenson's bail was set at $100,000.00. Southeastern's agent posted bond for Stevenson under a power of attorney that Ranger issued Apodaca under the Agreement ("Stevenson Bond"). Stevenson did not appear at his arraignment, and on April 20, 1999, the presiding judge declared the Stevenson Bond forfeited. The State of Maryland took no further action until July 7, 2015, when a bond forfeiture judgment was entered against Ranger on the Stevenson Bond in the amount of $100,000.00 plus interest ("Forfeiture Judgment").[2] On April 5, 2015, Ranger gave Apodaca notice of the Forfeiture Judgment. Apodaca did not pay the Forfeiture Judgment. On October 5, 2015, TIG, as Ranger's successor-in-interest, paid the entire Forfeiture Judgment.[3] TIG subsequently demanded Apodaca indemnify TIG for the Forfeiture Judgment payment, alleging the Agreement required Apodaca to do so. Apodaca has not indemnified TIG.

On November 12, 2015, TIG filed this lawsuit against Apodaca. TIG's complaint includes a claim for breach of contract, seeking indemnity for TIG's payment of the Forfeiture Judgment ("Indemnity Claim"). On January 15, 2016, Apodaca filed an answer asserting two affirmative defenses: (1) the statute of limitations; and (2) laches. On August 5, 2016, TIG moved for summary judgment against Apodaca on its breach of contract claim. On August 26, 2016, Apodaca moved for summary judgment on its affirmative defenses. Apodaca failed to respond to TIG's motion for summary judgment on TIG's substantive Indemnity Claim.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247—48, 106 S.Ct. 2505, 91 L.Ed.2d

---

2. The record is silent as to the cause of the sixteen-year delay in entering judgment.

3. Ranger satisfied the judgment through its litigation manager, Riverstone Resources.

202 (1986). Moreover, conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. The nonmovant's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Furthermore, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

## III. LAW & ANALYSIS

This is a breach of contract suit arising out of Apodaca's failure to indemnify TIG for a $102,316.60 payment that TIG made in satisfaction of the Forfeiture Judgment.

TIG contends Apodaca breached the Agreement by failing to indemnify TIG for the Forfeiture Judgment payment. Apodaca contends TIG's Indemnity Claim is barred by the statute of limitations and laches. The Court first addresses the affirmative defenses asserted and then turns to the merits of TIG's substantive claim.

### A. Statute of Limitations

Apodaca contends TIG's Indemnity Claim accrued when the Stevenson Bond was declared forfeited on April 20, 1999 and is therefore barred by the statute of limitations. TIG contends the Indemnity Claim accrued when the Forfeiture Judgment was entered on July 7, 2015 and is therefore timely. Under Texas law, the statute of limitations on a breach of contract claim is four years from the date the claim accrues.[4] TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). A contractual claim for indemnity accrues, at the earliest, on the day judgment is entered against the indemnitee. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 389 (5th Cir. 2007); *see also Krueger Eng'g & Mfg. Co. v. Admiral Truck Servs., Ltd.*, No. 14–01–0035–CV, 2002 WL 576083, at *8 (Tex.App.—Houston [14th Dist.] Apr. 18, 2002, no pet.) ("In the case of a promise to indemnify against liability, a cause of action accrues to the indemnitee only when the liability has become fixed and certain, as by rendition of a judgment.").

Although the Stevenson Bond was declared forfeited nearly sixteen years ago, the *Forfeiture Judgment* was not entered on the Stevenson Bond until July 7, 2015.[5] Thus, the earliest possible accrual

---

4. The parties do not dispute, and the Court agrees, that Texas law applies under a choice of law provision in the Agreement. *Plaintiff's Motion for Summary Judgment*, Exhibit A, ¶ 28 (*General Agent Bail Agreement*) [hereinafter 22 *Agreement*].

5. A judicial declaration that a bond is forfeited is not final or absolute and authorizes no

recovery by the state. *See Safety Nat'l Cas. Corp. v. State*, 273 S.W.3d 157, 163 (Tex. Crim. App. 2008); *see also State v. Sellers*, 790 S.W.2d 316, 321 (Tex. Crim. App. 1990) (en banc); *Fin. Cas. & Sur., Inc. v. Parker*, No. H–14–0360, 2015 WL 6684552, at *3 (S.D. Tex. Nov. 2, 2015) (Rosenthal, J.) (recognizing that an indemnity claim accrued when a bond

date for the Indemnity Claim is July 7, 2015. TIG, as Ranger's successor-in-interest, filed suit on November 12, 2015, approximately four months after the claim accrued. TIG's claim was therefore filed within the four-year statute of limitations. Accordingly, Apodaca's motion for summary judgment is denied as to its statute of limitations defense.

### B. Laches

 Apodaca contends TIG's claim is barred by laches. TIG contends laches does not apply because TIG's claim is not an equitable claim.[6] "Laches is an equitable remedy that prevents a plaintiff from asserting a claim because of the lapse of time . . . ." *Vickery v. Vickery*, 999 S.W.2d 342, 355 (Tex. 1999). Under Texas law, a defendant proves laches by showing (1) an unreasonable delay in bringing a claim one otherwise has a right to bring; and (2) a good faith change of position by another, to his detriment, because of this delay. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 971 (5th Cir. 1986). However, laches is generally only available as a defense to actions which are of an essentially equitable character. *FDIC v. Fuller*, 994 F.2d 223, 224 (5th Cir. 1993) ("[I]n legal actions, laches is not available."). A breach of contract claim is based on a purely legal right. *See Garcia v. Garza*, 311 S.W.3d 28, 40 (Tex. App.—San Antonio 2010, pet. denied). As such, laches is inapplicable to a breach of contract claim. *See Three H En-*

ters., *L.L.C. v. Advanced Envtl. Recycling Techs., Inc.*, 256 F.Supp.2d 568, 590 (W.D. Tex. 2002) (Austin, J.) ("[B]ecause [the plaintiff's] claim is based purely upon a legal right, i.e. breach of contract, the doctrine of laches is inapplicable."). TIG's Indemnity Claim is a legal action for breach of contract.[7] Laches is therefore inapplicable.

 Further, even considering the doctrine of laches, any delay in this case was caused by the State of Maryland, not TIG. As discussed *supra* Part III.A., TIG's claim did not accrue until the Forfeiture Judgment was entered against Ranger on July 7, 2015. TIG filed suit on November 12, 2015, within months of the entry of the Forfeiture Judgment. Thus, TIG did not delay in asserting any rights, and TIG did not cause Apodaca to be prejudiced. The Court therefore finds TIG's suit is not barred by laches. Accordingly, the Court denies summary judgment for Apodaca as to its laches defense.

### C. Indemnity Claim

 Having found Apodaca's affirmative defenses inapplicable, the Court turns to TIG's motion for summary judgment on whether Apodaca breached the agreement and must indemnify TIG.[8] TIG contends Apodaca is liable for the amount of the Forfeiture Judgment because the Agreement requires Apodaca to indemnify TIG for the costs of satisfying a bond

---

forfeiture judgment was entered, although the bond was declared forfeited seventy-five days earlier).

**6.** TIG also contends laches does not apply because this lawsuit was filed within the statute of limitations. In light of the Court's holding that laches is otherwise inapplicable, the Court need not address this argument.

**7.** The Court notes the Fifth Circuit has not confronted the applicability of laches to an indemnity claim arising from a bond forfei-

ture judgment—especially a forfeiture judgment entered approximately sixteen years after forfeiture 22 was initially declared.

**8.** Although Apodaca styled his motion as response and cross-motion for summary judgement, he only moved for summary judgement on his affirmative defenses and not on the substantive claim. In addition to not cross-moving on TIG's substantive claim in his motion, Apodaca failed to respond to TIG's motion for summary judgement on TIG's substantive claim.

forfeiture judgment and Apodaca failed to do so. Apodaca has not responded to TIG's motion for summary judgment on the substantive Indemnity Claim. Pursuant to Local Rule 7.4, the failure to respond is taken as a representation of no opposition. S.D. Tex. Local R. 7.4. Nonetheless, summary judgment may not be granted merely because no opposition has been filed. *Luera v. Kleberg Cnty. Tex.*, 460 Fed.Appx. 447, 449 (5th Cir. 2012) (per curiam).

 Indemnity agreements are construed under the normal rules of contract construction. *Associated Indem. Corp. v. Cat Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998). In interpreting a contract, the primary concern of the court is to "ascertain the true intent of the parties as expressed in the instrument." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). Terms of a contract are given their plain, ordinary, and generally accepted meaning unless the instrument shows the parties intended otherwise. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

Paragraph 9 of the Agreement states: "[Apodaca] shall be solely responsible for the satisfaction of bond forfeitures .... [Apodaca] ... shall be responsible for the payment of any and all judgments entered on bonds supplied by [Ranger]."[9] Paragraph 16 of the Agreement states:

> [Apodaca] shall indemnify, hold and save [Ranger] harmless from 100% of any and all reasonable costs, expenses and liabilities, including but not limited to, bond forfeitures, ... judgments ... and the like which [Ranger] may sustain or incur from time to time as a result of, arising from, or in connection with the subject matter of this Agreement, including but not limited to ... forfeiture of bonds.[10]

Read together, Paragraphs 9 and 16 unambiguously require Apodaca satisfy forfeiture judgments entered on bonds supplied by Ranger and indemnify Ranger for any costs Ranger incurs in satisfying such judgments. The parties do not dispute the Agreement runs to the benefit of TIG as Ranger's successor-in-interest.[11] Thus, under the Agreement, Apodaca must indemnify TIG for any costs TIG incurs in satisfying forfeiture judgments entered on bonds Ranger supplied to Apodaca.

Ranger entrusted the Stevenson Bond to Apodaca in accordance with the Agreement; Apodaca's sub-agent posted and filed the Stevenson Bond. Apodaca was therefore responsible for the satisfaction of any forfeiture judgment arising from the Stevenson Bond. A forfeiture judgment was subsequently entered on the Stevenson Bond and Apodaca failed to satisfy it. Instead, TIG paid the Forfeiture Judgment in the amount of $102.316.60. Apodaca was therefore required to indemnify TIG for that amount. TIG notified Apodaca of TIG's payment of the Forfeiture Judgment and demanded indemnification. Apodaca has yet to indemnify TIG for TIG's payment of the Forfeiture Judgment. Therefore, the Court finds Apodaca breached the Agreement and is liable to TIG for the amount of the Forfeiture Judgment: $102.316.60. Accordingly, TIG's motion for summary judgment is granted.

### D. Attorneys' Fees

 TIG contends it is entitled to an award of reasonable attorneys' fees. Under Texas law, attorneys' fees may be recovered if provided for by contract between the parties. *Great American Ins. Co. v. AFS/IBEX Financial Services, Inc.*, 612 F.3d 800, 807 (5th Cir. 2010) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212

9. *Agreement, supra* note 4, ¶ 9.

10. *Agreement, supra* note 4, ¶ 16.

11. *Agreement, supra* note 4, ¶ 33.

S.W.3d 299, 310 (Tex. 2006)). Apodaca did not respond to TIG's request for attorneys' fees. Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition. S.D. TEX. LOCAL R. 7.4. The Agreement states: "Should any litigation arise between the parties hereto related to this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees ...."[12] The Court has granted TIG's motion for summary judgment and denied Apodaca's motion for summary judgment. Thus, TIG is the prevailing party. Accordingly, TIG is entitled to reasonable attorneys' fees.

### 1. Calculation of Attorneys' Fees

 Texas courts, like district courts within the Fifth Circuit, apply the lodestar method to calculate attorneys' fees. *Rappaport v. State Farm Lloyds*, 275 F.3d 1079, 2001 WL 1467357, at *3 (5th Cir. 2001) (per curiam); *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). Under this approach, the district court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Once the lodestar figure is initially determined, the court may adjust the figure upward or downward as necessary in light of several enunciated factors. *Id.* "The lodestar [amount], however, is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

#### a. Reasonable Number of Hours

 To establish the reasonable number of hours expended on the litigation by the movant's attorney, "courts customarily require the [movant] to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). In support of its fee request, TIG has submitted the affidavit of Brad Irelan ("Irelan"), the lead attorney representing TIG, and invoices from attorneys Irelan, Debra Hovnatanian ("Hovnatanian"), Sean Braun ("Braun"), and paralegal Crys Hymel ("Hymel"). The invoices contain detailed explanations of each hour billed and the balance due for services rendered. The invoices show Irelan billed for 22.2 hours of work, Hovnatanian billed for 50.4 hours of work, Braun billed for 23.3 hours of work, and Hymel billed for 9.9 hours of work on this case.[13] The detailed invoices show the attorneys and paralegal reviewed material from Ranger to determine the nature and amount of the claim, prepared and filed the complaint, researched Apodaca, responded to Apodaca's discovery request, and researched and drafted TIG's motion for summary judgment. After reviewing the evidence submitted, the Court finds the attorneys and paralegal representing TIG exercised reasonable billing judgment, 22.2 hours is a reasonable number of hours for Irelan to have expended on this litigation, 50.4 hours is a reasonable number of hours for Hovnatanian to have expended on this litigation, 23.3 hours is a reasonable number of hours for Braun to have expended on this litigation, and 9.9 hours is a reasonable number of hours for Hymel to have expended on this litigation.

#### b. Reasonable Hourly Rate

 To establish the reasonable hourly rate for the movant's attorney,

---

12. *Agreement, supra note 4, ¶ 31.*

13. The Court calculated Irelan, Hovnatanian, Braun, and Hymel's billable hours by referencing the billing invoices attached to Irelan's affidavit. *Plaintiff's Motion for Summary Judgment*, Exhibit L (*Affidavit of Braford W. Irelan Supporting Attorneys' Fees*) [hereinafter *Attorneys' Fees Affidavit*].

courts must consider the attorney's regular rate as well as the prevailing market rate, which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate ... hourly rate." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Evidence of the reasonableness of a proposed hourly rate must include an affidavit of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896, 104 S.Ct. 1541. A court may use their own expertise and judgment to make an independent determination of the value of an attorney's services. *Davis v. Bd. Of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976). The court utilizes the same method for determining the reasonable hourly rate of a paralegal. *Richardson v. Tex–Tube Co.*, 843 F.Supp.2d 699, 709 (S.D. Tex. 2012) (Hittner, J.).

▪▪▪▪ TIG requests a lodestar calculation based on an hourly rate of $275 for Irelan, $235 for Hovnatanian and Braun, and $140 for Hymel. The affidavit states Irelan has represented surety companies for over twenty-five years. Irelan is also board certified by the Texas Board of Legal Specialization in civil trial law and residential real estate. The affidavit states Hovnatanian has practiced law in state and federal Texas courts since 1993. Braun is Irelan's associate. Irelan further avers he is familiar with attorneys' fees and legal assistant fees customarily charged by attorneys for handling commercial claims and prosecuting suits to recover losses associated with bail bond agents. According to Irelan's undisputed affidavit, the rates charged are "reasonable, usual, and customary for services performed in Houston, Texas for this type of litigation ...."[14] Based on the Court's experience and knowledge of other reasonable rates charged by attorneys in similar cases, the testimony of Irelan, and the other evidence submitted by TIG, the Court finds the hourly rates charged by Irelan, Hovnatanian, Braun, and Hymel are reasonable.[15]

### c. Adjustment to Lodestar

Having determined the reasonable number of hours expended and the reasonable hourly rate, the Court determines the lodestar as follows:

---

14. *Attorneys' Fees Affidavit, supra* note 13.

15. "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1087 (S.D. Tex. 2012) (Rosenthal, J.) (alteration in original) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)). Courts may also use their own expertise and judgment to make an independent determination of the value of an attorney's services. *Hilton v. Exec. Self Storage Assocs., Inc.*, No. H–06–2744, 2009 WL 1750121, at *9 (S.D. Tex. June 18, 2009) (Rosenthal, J.) (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976)).

| Billing Individual | Hours | Rate | Lodestar |
|---|---|---|---|
| Bradford Ireland | 22.2 | $275 | $6,105.00 |
| Debra Hovnatanian | 50.4 | $235 | $11,844.00 |
| Sean Braun | 23.3 | $235 | $5,475.50 |
| Crys Hymel | 9.9 | $140 | $1,386.00 |
| | | **Total:** | $24,810.50 |

There is a strong presumption that the lodestar is reasonable, and it should be modified only in exceptional cases. *Watkins*, 7 F.3d at 458 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)). When deciding whether to make an adjustment to the lodestar, courts consider the factors articulated in *Johnson v. Georgia Highway Exp., Inc.*, which are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services; (4) the preclusion of other potential employment by the attorney; (5) the customary fee charged for similar services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d 714, 717–19 (5th Cir. 1974). However, the most critical factor in the analysis is the "degree of success obtained." *Jason D. W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). Moreover, some of the factors are often subsumed in the initial lodestar calculation; therefore, courts cannot consider factors that were already taken into account during the initial lodestar calculation when deciding whether to adjust the lodstar. *Id.*

The Court has carefully considered each of the *Johnson* factors as applied to this case and determines their consideration is accurately reflected in the lodestar. Accordingly, TIG is entitled to recover the lodestar—$24,810.50—in attorneys' fees from the Defendant.

### E. Prejudgment Interest

TIG also seeks an award of prejudgment interest. Apodaca did not respond to TIG's request for prejudgment interest. Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition. S.D. Tex. Local R. 7.4. "In the absence of a statutory right to prejudgment interest, Texas law allows for an award of equitable prejudgment interest under *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985)." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) (internal quotation marks omitted). "Under this standard, an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." *Id.* (citing *Bituminous Cas.*

*Corp. v. Vacuum Tanks, Inc.,* 75 F.3d 1048, 1057 (5th Cir. 1996)).

Prejudgment interest, including an equitable award of prejudgment interest, is calculated in accordance with chapter 304 of the Texas Finance Code. *Arete Partners, L.P. v. Gunnerman,* 643 F.3d 410, 414–15 (5th Cir. 2011) (citing *Johnson & Higgins of Tex, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 530–33 (Tex. 1998)). Thus, prejudgment interest accrues as simple interest on the amount of a judgment, beginning on the earlier of the 180th day after written notice of the claim or the date suit is filed and ending on the day preceding the date judgment is rendered, at the prime rate or five percent a year if the prime rate is less than five percent. *Id.*; TEX. FIN. CODE §§ 304.003(c), 304.103, 304.104.

In this case, TIG does not have a statutory right to prejudgment interest. *See* TEX. FIN. CODE § 304.103 (providing for prejudgment interest in wrongful death, personal injury, or property damage cases). However, because TIG is the prevailing party, Apodaca has not opposed the request, and the Court finds no exceptional circumstances in this case, an equitable award of prejudgment interest should be granted to TIG. Prejudgment interest is to accrue as simple interest on the amount of judgment ($102,316.60), beginning on the date suit was filed (November 12, 2015) and ending on the day preceding the date judgment is rendered. Prejudgment interest is to accrue at five percent a year because the prime rate is currently less than five percent.[16] Accordingly, TIG is entitled to 5% interest on $102,316.60 from November 12, 2015, until the date preceding the date judgment is rendered.

### F. Postjudgment Interest

TIG also seeks an award of postjudgment interest on the final judgment, any award of prejudgment interest, and any attorneys' fees or costs. Apodaca did not respond to TIG's request for postjudgment interest. Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition. S.D. TEX. LOCAL R. 7.4. An award of postjudgment interest is governed by 28 U.S.C. § 1961. *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.,* 718 F.3d 448, 456—57 (5th Cir. 2013). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and "such interest shall be calculated from the date of entry of the judgment." 28 U.S.C. § 1961(a). This rule applies to awards of prejudgment interest. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.,* 288 F.3d 222, 234 (5th Cir. 2002). This rule also applies to awards of attorneys' fees and costs. *Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542, 544–45 (5th Cir. 1983), *overruled in part on other grounds by J.T. Gibbons, Inc. v. Crawford Fitting Co.,* 790 F.2d 1193, 1195 (5th Cir. 1986). Further, 28 U.S.C. § 1961 details which rate to use and states that "[t]he Director of the Administrative Office of the United States Courts shall distribute notice of that rate." 28 U.S.C. § 1961(a). "Interest shall be computed daily to the date of payment … and shall be compounded annually." *Id.* § 1961(b). An award of postjudgment interest is not discretionary. *Meaux Surface Prot.,* 607 F.3d at 173. Because this is a civil case in federal district court, postjudgment interest shall be awarded pursuant to 28 U.S.C. § 1961. The postjudgment interest rate on the date of judgment, as

---

**16.** *See* TEX. FIN. CODE §§ 304.003(c), 304.103, 304.104; *Selected Interest Rates,* BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, http://www.federalreserve.gov/ releases/h15/current (release date February 7, 2017); *Interest Rates,* OFFICE OF CONSUMER CREDIT COMMISSIONER, http://www.occc.state.tx.us/pages/int_rates/Index.html (last updated February 8, 2017).

calculated by the United States Courts pursuant to 28 U.S.C. § 1961, is 0.83%.[17] Accordingly, TIG is entitled to 0.83% interest on the total judgment amount from the date of judgment until the date of payment.

## IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Plaintiff's Motion for Summary Judgment is **GRANTED**. The Court further

**ORDERS** that Defendant Thomas Apodaca's Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment is **DENIED**. The Court further

**ORDERS** that Plaintiff TIG Insurance Company shall recover $102,316.60 in actual damages from Defendant Thomas Apodaca. The Court further

**ORDERS** that Plaintiff TIG Insurance Company shall recover $24,810.50 in attorneys' fees from Defendant Thomas Apodaca. The Court further

**ORDERS** that Plaintiff TIG Insurance Company shall recover 5% interest on $102,316.60 from November 12, 2015, until the date preceding the date judgment is rendered. The Court further

**ORDERS** that Plaintiff TIG Insurance Company shall recover 83% interest on $127,127.10 from the date of judgment until the date of payment.

The Court will issue a separate Final Judgment.

**17.** *Post–Judgment Interest Rates—2017,* U.S. District & Bankr. Cts., S. District Tex., http://www.txs.uscourts.gov/page/post-judgment- interest-rates-2017 (last modified February 6, 2017).